03-4803-ag
Gui Yin Liu v. INS

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

————————

August Term, 2004

(Submitted: November 18, 2004                    Decided: January 30, 2007

Opinion Revised:   November 30, 2007)

————————

Docket No. 03-4803-ag

————————

GUI YIN LIU,

*Petitioner*,

—v.—

IMMIGRATION AND NATURALIZATION SERVICE,

*Respondent.*

————————

B e f o r e :

CALABRESI and STRAUB, *Circuit Judges*.[1]

————————

Petition for rehearing of our January 30, 2007 decision, in which we held, *inter alia*, that we had jurisdiction to review the Immigration Judge's determination that petitioner's asylum application was not timely filed. We grant the petition for rehearing and now hold that we lack jurisdiction to review that determination. The petition for review of the denial of asylum is

[1]The Honorable James L. Oakes, who was originally a member of this panel, retired after this case was originally decided. The remaining two panel members, who agree on the disposition, decide the petition for rehearing pursuant to Local Rule § 0.14(b).

dismissed for lack of jurisdiction, and the petition for review of the withholding of removal and CAT claims is granted.

_____

Gui Yin Liu, Petitioner, *pro se*.

Michael J. Garcia, United States Attorney for the Southern District of New York, Benjamin H. Torrance, James L. Cott, David S. Jones, Assistant United States Attorneys, New York, NY, *for Respondent*.

Lee Gelernt, American Civil Liberties Union Foundation, Immigrants' Rights Project, New York, NY, Lucas Guttentag, Jennifer Chang, American Civil Liberties Foundation, Immigrants' Rights Project, San Francisco, CA, *Amicus Curiae in Support of Petitioner*.

C. Mario Russell, Mark R. Von Sternberg, Catholic Charities Community Services, New York, NY, *Amicus Curiae in Support of Petitioner*.

_____

PER CURIAM:

## FACTS AND PROCEDURAL HISTORY

### A. Original Appeal

Petitioner Gui Yin Liu, a native and citizen of the People's Republic of China, seeks review of an April 2, 2003 order of the Board of Immigration Appeals ("BIA") affirming the May 2, 2001 decision of Immigration Judge ("IJ") Philip L. Morace denying Liu's application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Gui Yin Liu*, No. A 78 208 279 (B.I.A. Apr. 2, 2003), *aff'g* No. A 78 208 279 (Immig. Ct. N.Y. City May 2, 2001). Liu claims that he fled China in 1999 after government officials forced his wife to undergo a forcible sterilization procedure, and that he has a well founded fear of future persecution. The IJ concluded that Liu's asylum application was barred as untimely because Liu had failed to demonstrate by clear and convincing evidence that the application was filed within

one year of his arrival in the United States, as required by Title 8, Section 1158(a)(2)(B) of the United States Code.[2] As part of his application, Liu had submitted a police record which stated, in relevant part: "This is to certify that Liu Gui Yin (male, born on January 4, 1959, currently residing in the USA) had no record of committing offenses against the criminal law up to the date when he left China on June 28, 1999, during his residence in China." Liu's application for asylum was received on June 27, 2000. After recognizing that it was Liu's burden to show by "clear and convincing" evidence that he applied for asylum within one year of his arrival in the United States, the IJ found that the police record was insufficient to meet the clear and convincing standard. The IJ explained: "[T]he document is not a contemporaneously produced document, nor is it a document which indicates for certain that the respondent was indeed there during the aforementioned period." The IJ further reasoned:

> For instance, if it was a record to show that he was in the police department on a particular day, or had a receipt in China for a particular reason, or a medical record in China on that date, then it would be more probative to establish that he was indeed still in China as late as 1999. But that document doesn't purport to be any of those things. . . . [I]t does not demonstrate what the respondent hopes that it would have demonstrated and that is to establish that he was indeed in China in 1999.

The IJ then went on to address the other piece of evidence submitted in support of the proposition that Liu applied for asylum within one year of arriving in the US:

> The respondent has submitted an affidavit from his sister-in-law's husband. That affidavit just indicates that the brother-in-law, if you will, received a phone call from the respondent on July 7, 1999 to pick him up at the Yi Dong (phonetic sp.) Restaurant here in New York City. It does not really demonstrate as to when the respondent came to the United States. The affidavit itself contains a few details and

---

[2]Subject to certain exceptions not at issue here, an asylum applicant must "demonstrate[] by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States." 8 U.S.C. § 1158(a)(2)(B).

3

the affiant, although in the United States, chose not to appear for examination today.

Finally, the IJ addressed Liu's own testimony with respect to this issue:

> With regard to the respondent's own testimony on this issue of the one year bar, unfortunately I find that it was not at all credible. He was very vague throughout this testimony on this issue, very journalized, non-responsive. . . . The plausibility of some of his responses also was a concern. He indicates for instance, that he had snake heads help him get from the People's Republic of China to Hong Kong and then put[] him on a plane, but then he was put on a plane apparently, according to the respondent's testimony, with no other documentation and no other instructions as to what to do once he arrived at the airport in Los Angeles, California on or about July 5 of 1999, according to the respondent. Again, this seems to defy plausibility. Respondent was very, very vague as to what happened once he got off the airplane. He says he got on the line, then he says he got off the line, then he says he made it to the front of the counter. He indicated that nobody was at the counter. So it's not entirely clear, but suddenly he's outside the airport, apparently without inspection. Again, providing us with very few details or specifics as to how that could have happened. He went to a hotel. First, he could not recall how he got there. Later on, . . . he recalled that a Mandarin speaking cab driver helped him get to the hotel and check in. But the next day he's back at the airport purchasing a ticket and once again, it's not clear how he was able to purchase the ticket. He doesn't remember when he boarded the plane . . . from Los Angeles to New York. He's not certain of the date that he arrived in New York, but he does remember getting there sometime in the morning. . . .

The IJ accordingly found that Liu had not met his burden of demonstrating by clear and convincing evidence that he had applied for asylum within one year of his arrival in the United States and was therefore ineligible for asylum.

The IJ also denied Liu's claims for withholding of removal and CAT relief, finding Liu's testimony regarding the alleged persecution similarly vague and nonresponsive.

The BIA affirmed the IJ's decision without opinion. On January 30, 2007, we issued a per curiam opinion granting the petition for review and remanding the case to the BIA. *Gui Yin Liu v. INS*, 475 F.3d 135 (2d Cir. 2007) (per curiam). We determined that the agency erred in finding that the asylum application was untimely. Although we recognized that, pursuant to 8 U.S.C. §

4

1158(a)(3) and 8 U.S.C. § 1252(a)(2)(D), our jurisdiction over such discretionary determinations was limited to "questions of law," we cited *Xiao Ji Chen v. U.S. Dep't of Justice*, 471 F.3d 315, 327 (2d Cir. 2006), for the proposition that jurisdiction may arise in the case of "fact-finding which is flawed by an error of law, such as might arise where the IJ states that his decision was based on petitioner's failure to testify to some pertinent fact when the record of the hearing reveals unambiguously that the petitioner did testify to that fact." *Id*. at 331 (citing *Tian-Yong Chen v. INS*, 359 F.3d 121, 127 (2d Cir. 2004)).

We then vacated the IJ's determination regarding the timeliness of the asylum application, concluding that we had jurisdiction over the issue because the IJ "unambiguously mischaracterized a central element of the record: Liu's record with the Chinese police." *Gui Yin Liu*, 475 F.3d at 138. We reasoned that the police record "expressly stated that Liu 'had no record of committing offenses against the criminal law *up to the date when he left China on June 28, 1999*, during his residence in China,'" and "[t]he IJ's unambiguous mischaracterization of the record raises a question of law." *Id*. (emphasis in original). We further concluded that the IJ's adverse credibility determination with respect to the asylum, withholding of removal, and CAT claims was not supported by substantial evidence. *Id*. at 138-39. Accordingly, we remanded the case to the BIA for reconsideration of Liu's asylum, withholding of removal, and CAT claims.

**B.** **Government's Petition for Rehearing**

The government petitions for rehearing, challenging only our determination that we had jurisdiction over the timeliness finding. The government argues that the REAL ID Act permits review of otherwise-barred determinations when "constitutional claims or questions of law" are presented, but that this case involves "essentially a quarrel about fact-finding." The government

5

also argues that the passage in *Xiao Ji Chen* relied upon by this Court for the proposition that "[t]he IJ's unambiguous mischaracterization of the record raises a question of law," *Gui Yin Liu*, 475 F.3d at 138, is dicta, but that, in any event, the IJ in this case did not unambiguously mischaracterize the record.

We appointed Lee Gelernt of the American Civil Liberties Union's Immigrants' Rights Project ("IRP") as *amicus curiae* on behalf of petitioner. Subsequently, Mario Russell of Catholic Charities Community Services ("Catholic Charities"), who had previously served in this case as *amicus*, moved to appear as *amicus* as well, and we granted that motion. *Amicus* IRP argues that *Xiao Ji Chen* was correctly decided, and that this Court was correct in stating that an unambiguous mischaracterization of the record amounts to a "question of law," because "[u]nder longstanding doctrine, a factual error amounts to a *due process* violation where there is not even 'some evidence' to support the finding." IRP takes no position on whether the IJ's findings with respect to the police report amounted to an unambiguous mischaracterization of the record. *Amicus* Catholic Charities makes similar arguments, but also argues in a conclusory fashion that the IJ made an unambiguous mischaracterization of the record because "[t]hat the police record . . . unambiguously stated Petitioner had left China on a particular date cannot be disputed."

## DISCUSSION

### A.     Asylum Claim

Title 8, Section 1158(a)(3) of the United States Code provides that this Court lacks jurisdiction to review the agency's determinations under 8 U.S.C. § 1158(a)(2)(B). Notwithstanding that provision, however, this Court retains jurisdiction to review "constitutional claims" and "questions of law." 8 U.S.C. § 1252(a)(2)(D). In *Xiao Ji Chen*, we stated that

6

"although the REAL ID Act restores our jurisdiction to review 'constitutional claims or questions of law,' 8 U.S.C. § 1252(a)(2)(D), we remain deprived of jurisdiction to review decisions under the INA when the petition for review essentially disputes the correctness of an IJ's fact-finding or the wisdom of his exercise of discretion and raises neither a constitutional claim nor a question of law." 471 F.3d at 329. Although in *Xiao Ji Chen* we declined to "determine the precise outer limits of the term 'questions of law,'" *id*. at 328, we stated that a question of law may "arise for example in fact-finding which is flawed by an error of law" or "where a discretionary decision is argued to be an abuse of discretion because it was made without rational justification or based on a legally erroneous standard," *id*. at 329; however, in *Xiao Ji Chen* we also made clear that a petitioner cannot "us[e] the rhetoric of a 'constitutional claim' or 'question of law' to disguise what is essentially a quarrel about fact-finding or the exercise of discretion," *id*. at 330.

In the initial briefing regarding the petition for review, Liu and *amicus* Catholic Charities argued that the IJ failed to "take into account [Liu's] full testimony and the circumstances surrounding [his] filing of an asylum application," mischaracterized the police record, and failed to assess the evidence Liu presented with respect to the one-year deadline in its totality. These arguments amount to "essentially a quarrel about [the IJ's] fact-finding" with respect to the one-year deadline determination, and we accordingly lack jurisdiction to review that determination. *Id*. at 330.

This is not to say that this Court could never have jurisdiction over a timeliness determination. For example, a petitioner could raise a reviewable "question of law" by arguing that the IJ used the wrong legal standard in coming to his determination. *See Ilyas Khan v. Gonzales*, 495 F.3d 31, 35 (2d Cir. 2007) (finding jurisdiction where "Khan[] argu[ed] that the IJ

7

applied the wrong legal standard"). In this case, Liu does not and could not raise such an argument, because the IJ clearly articulated the "clear and convincing" evidence standard when rendering his timeliness determination.

Moreover, even in such cases where the IJ states the correct legal standard, there might arise instances where the evidence presented by an applicant so obviously meets the clear and convincing standard that it becomes evident that although the IJ *articulated* the correct standard, he erroneously *applied* a heightened standard. Such an argument could constitute a "question of law" over which this Court has jurisdiction. *See id.*[3] Again, Liu does not and could not raise such an argument here because the IJ in this case set forth the correct standard and then thoroughly stated his reasons for determining that Liu had not met his burden. For example, although we originally interpreted the police report as "expressly stat[ing]" that Liu was in China until June 28, 1999, *Gui Yin Liu*, 475 F.3d at 138, the report was certainly open to other interpretations, including that of the IJ, who apparently found that the police record assumed, but did not affirmatively prove, Liu's date of departure. The IJ also found that the brother-in-law's affidavit,

---

[3]In *Ramadan v. Gonzales*, 479 F.3d 646 (9th Cir. 2007), the Ninth Circuit Court of Appeals held that "questions of law . . . extends to questions involving the application of statutes or regulations to undisputed facts, sometimes referred to as mixed questions of fact and law." *Id.* at 650 (internal quotation marks omitted). Accordingly, the court found jurisdiction "to review Ramadan's challenge to the IJ's determination that Ramadan filed to show changed circumstances to excuse the untimely filing of her application for asylum." *Id.* at 648. However, in *Xiao Ji Chen*, we made clear that in the REAL ID Act jurisdiction context, "'[w]hen a court is presented with a mixed question of law and fact, the court should analyze it to the extent there are legal elements, *but should not review any factual elements*.'" *Id.* at 329 n.7, quoting H.R. Rep. No. 109-72, at 175, U.S. Code Cong. & Admin. News 2005, at 300. This statement lends further support to the conclusion that when an IJ has not articulated or applied an incorrect legal standard, the factual determinations are unreviewable; however, when an IJ makes a determination that evinces application of an incorrect legal standard, the determination is reviewable.

8

which stated only that Liu asked him to pick him up from a restaurant in New York City on July 7, 1999, was not probative of Liu's date of arrival in the US. We cannot conclude on the record before us that the IJ's interpretation of the facts indicated an erroneous application of a heightened legal standard, and so a question of law has not been raised.

Finally, in *Xiao Ji Chen* we also left open the possibility that a question of law could arise "in fact-finding which is flawed by an error of law, such as might arise where the IJ states that his decision was based on petitioner's failure to testify to some pertinent fact when the record of the hearing reveals *unambiguously* that the petitioner did testify to that fact." *Id*. at 329 (emphasis added). In our prior decision in this case, we determined, relying on this passage from *Xiao Ji Chen*, that the IJ "unambiguously mischaracterized a central element of the record: Liu's record with the Chinese police." *Gui Yin Liu*, 475 F.3d at 138. Accordingly, we concluded that "[t]he IJ's unambiguous mischaracterization of the record raises a question of law." *Id*.

Upon reconsideration, we conclude that the IJ did not "unambiguous[ly] mischaracteriz[e]" the record in this case. As stated above, the IJ found that the report was not probative as to Liu's departure date from China, and he gave several persuasive reasons for this finding, including that the report was not contemporaneously produced and did not affirmatively state that Liu was in China on that date. While we may not ultimately agree with the IJ's characterization of the police report, it cannot be deemed an "unambiguous mischaracterization." Any jurisdictional exception set forth in *Xiao Ji Chen* for unambiguous mischaracterizations of the record simply does not apply in this case, and we need not disturb it or any other holding in *Xiao Ji Chen*.

Accordingly, we now conclude that we do not have jurisdiction to review the timeliness

9

determination and that the asylum claim must be dismissed for lack of jurisdiction.

**B.      Withholding of Removal and CAT Claims**

Although the timeliness issue is dispositive of Liu's asylum claim, his withholding of removal and CAT claims are unaffected by that determination. In our prior opinion, we remanded all of the claims, concluding that the IJ's adverse credibility determination was not supported by substantial evidence because the IJ's finding that Liu's testimony was insufficiently detailed was flawed. *Gui Yin Liu*, 475 F.3d at 138-39; *see also Mei Chai Ye v. U.S. Dep't of Justice*, 489 F.3d 517, 523 (2d Cir. 2007) ("The IJ's factual findings, including adverse credibility findings, are reviewed under the substantial evidence standard of 8 U.S.C. § 1252(b)(4)(B)."). The government did not challenge that conclusion in its petition for rehearing. Accordingly, our conclusion that substantial evidence did not support the adverse credibility determination stands as to the withholding of removal and CAT claims.[4]

However, since our original opinion in this case was published, this Court decided *Shi Liang Lin v. U.S. Dep't of Justice*, 494 F.3d 296 (2d Cir. 2007) (en banc), in which we held that under the plain language of 8 U.S.C. § 1101(a)(42), a claim of persecution based *solely* on a forced abortion or sterilization procedure can only be brought by the individual who has

---

[4]We recognize the apparent inconsistency between, on the one hand, rejecting the IJ's adverse credibility determination as to the withholding of removal and CAT claims, and, on the other, upholding the timeliness determination with respect to the asylum claim, which was based in part on the adverse credibility determination. However, as stated above, while an IJ's adverse credibility finding, which is a factual determination, is reviewed under the substantial evidence standard, we are without jurisdiction to review an IJ's timeliness determination, which is also a factual finding, unless the finding was flawed by an error of law. Although we now hold that the IJ's timeliness determination did not raise a legal issue, and we thus lack jurisdiction to review that finding, we are not barred from reviewing the adverse credibility determination with respect to the withholding of removal and CAT claims and concluding that it was not supported by substantial evidence in the record.

undergone the procedure. *Id*. at 309-310 (stating that spouses or other partners "must turn to the two remaining categories of § 601(a), which provide protection to petitioners who demonstrate 'other resistance to a coercive population control program' or 'a well founded fear that he or she will be . . . subject to persecution for such . . . resistance. . . .'" ) (ellipses in original). Accordingly, Liu's withholding of removal claim, to the extent it is based only on his wife's forced sterilization, is doomed.

However, Liu's claims are not based *solely* on his wife's forced sterilization. Indeed, even before our decision in *Shi Liang Lin* was handed down, Liu claimed, *inter alia*, that he "possesses a well-founded fear of future persecution at the hands of the family planning cadres, should he return to China, because there is a reasonable possibility that he will be harmed" (internal quotation marks omitted); that he suffered persecution "pursuant to the Chinese population control policy and [fears] persecution . . . on return to China for his resistance to that policy"; and that he "has demonstrated that he is eligible for withholding of removal . . . , since his freedom would be threatened upon return to China on account of his political opinions."[5]

Accordingly, on remand, the BIA should decide in the first instance whether Liu's withholding of removal claim survives *Shi Liang Lin*, including, if necessary, by remanding to the IJ for additional proceedings so that the record with respect to Liu's other resistance and well-founded fear claims can be adequately developed. *See Qun Yang v. McElroy*, 277 F.3d 158, 162 (2d Cir. 2002) ("[T]he IJ . . . , unlike an Article III judge, is not merely the fact finder and

---

[5]Indeed, the IJ appeared to recognize that Liu's claims were not based solely on his wife's forced sterilization, stating in his decision that the adverse credibility determination compels a finding that "it is [not] more likely than not that the respondent would be persecuted in China upon return to that country."

11

adjudicator but also has an obligation to establish the record.").[6]

**CONCLUSION**

For the foregoing reasons, the petition for rehearing of our January 30, 2007 decision in this case is GRANTED, and that decision is VACATED in part. The petition for review of the denial of asylum is DISMISSED for lack of jurisdiction, and the petition for review of the withholding of removal and CAT claims is GRANTED. The BIA's order is VACATED in part and REMANDED in part for further proceedings consistent with this opinion. Having completed our review, the stay of removal that the Court previously granted in this petition is VACATED.

---

[6]As we stated in our earlier opinion, because Liu failed to argue before either this Court or the BIA his claims for relief based on the illegal nature of his departure from China, we consider that basis for relief abandoned. *See* 8 U.S.C. § 1252(d)(1); *Yueqing Zhang v. Gonzales*, 426 F.3d 540, 545 n.7 (2d Cir. 2005).

12